**No. 39031.**—Petition 5577–R of Daniel Cano (El Paso).

DALLINGER, Judge: This petition was filed under section 489 of the Tariff Act of 1930 for remission of additional duties imposed by the collector of customs at the port of El Paso, Tex., on certain cattle hides imported from Mexico and which were entered at that port at less than the final appraised value.

The petitioner offered in evidence the testimony of four witnesses. The first, Daniel Cano, the petitioner herein, testified that he was a Mexican citizen living in Chihuahua, Mexico, where he bought and sold hides; that this was the first and only importation of hides made by him into the United States; that prior to said importation he had telephoned from Juarez to his employee, Benigno Saucedo, who was in Chihuahua, instructing him to value the hides at 25 centavos per pound; that the said employee made a mistake and sent the invoice from Chihuahua to Bailey & Mora, the witness' customs brokers at Juarez, showing a price therein of 25 centavos per kilo; that a kilo is two and three-tenths pounds; that he signed the original consumption entry 692 herein; that he cannot read English; that he did not realize that he was committing himself to a value of 3½ cents per pound when he signed said entry; that he did not ask to have the entry explained to him because he had absolute confidence in his customs brokers; that he gave no instructions to his customs brokers as to the value to give on entry; that he assumed that his employee at Chihuahua in preparing the consular invoice to be sent to his customs brokers had followed his instructions by placing a

valuation of 25 centavos per pound; that he first learned that there had been an undervaluation two days after the hides reached the United States; that he asked Mr. Bailey, of Bailey & Mora, what could be done about it and was told an amended entry could be filed; that he went to the customhouse at El Paso with his amended entry and a check for the additional $210.70 duty before 12 o'clock on a Saturday, but was told that it was too late; and that when demand was made upon him for the additional duties amounting to $1,794.92 he paid the same.

On cross-examination he testified that he did not give to Bailey & Mora the prices of the merchandise; that when he signed the consumption entry the figures "$210.70" were noted thereon, and that he did not question Bailey & Mora in regard thereto.

The second witness, Benigno Saucedo, testified that he was a Mexican citizen living in Chihuahua; that he was employed as assistant accountant by the petitioner, Daniel Cano; that Cano gave him the weight of the hides in question as 27,000 kilos and the value thereof as 25 cents per pound Mexican money; that in making out the consular invoice he put the quantity as 27,000 kilos and the price as 25 centavos per kilo; that in so doing he committed an error; that in Chihuahua and throughout Mexico the metric system prevailed, the kilo being the ordinary unit of weight instead of the pound; and that personally he knew nothing about the value of hides.

On cross-examination he testified that he sent the invoice to Bailey & Mora; that the consular invoice which he had made out and which was shown to him gives the amount of the shipment as 61,171 pounds and the purchase price as 3½ cents per pound; that there is nothing contained in said invoice about kilos; that 25 centavos per pound would be about 7 cents; that he wrote the price in the invoice as 3½ cents per pound; that this is the invoice which he sent to Bailey & Mora; that the consular invoice in evidence herein was the consular invoice which he sent to Bailey & Mora; and that said invoice is signed by the assistant manager, who does not understand English.

The third witness for the petitioner was Bishop L. Bailey of the firm of Bailey & Mora. He testified that he acted as customs broker for the petitioner, Daniel Cano; that about April 7 he received word from his Juarez office that a car containing the hides in question had arrived; that the consumption entry herein was prepared in his office and a value of 3½ cents per pound given, the amount shown in the consular invoice; that personally he is not familiar with the value of hides; that upon receiving information of an undervaluation he got in touch with the petitioner and after considerable difficulty convinced him that the hides were undervalued and that an amended entry should be filed; that in his opinion the petitioner Cano apparently thought that they were entering the hides at 25 centavos per kilo, which was the equivalent of 7 cents per pound in American money; that the petitioner prepared an amended entry, had Mr. Cano sign it, and in company with Mr. Cano and another employee went to the customhouse; that upon reaching the customhouse they were informed by Mr. John Lewis, deputy collector of customs, that Mr. Manker, the appraiser, had gone to appraise the hides at the warehouse of the Finnegan Hide Co. in the southern part of El Paso; and that they then proceeded to the warehouse of the Finnegan Hide Co. and saw Mr. Manker who said it was too late, but gave no reason.

On cross-examination he testified that nothing was said to him by Mr. Cano concerning the value of the hides; that the reason he went to the customhouse and to the Finnegan Warehouse with Mr. Cano was that he had been told that an amended entry could not be filed except in Mr. Cano's presence; that at the time he did not have the amended entry with him, but that just before he left his office he had told his clerk, Mr. Lawrence J. Herrin, to prepare an amended entry and raise the value of the hides 100 per centum.

The last witness for the plaintiff, Lawrence J. Herrin, a clerk in the employ of Bailey & Mora in El Paso, testified that on Thursday, April 8, he prepared the original consumption entry giving the value of the hides at 3½ cents per pound, which was the amount stated in the consular invoice; that he presented the consumption entry to John Lewis at the customhouse and paid the duty; that on the afternoon of April 9 Mr. Manker, the appraiser, called his attention to the fact that the value given for the hides was too low, and stated that he could have until the following day at 12 o'clock to amend the entry; that he immediately brought that fact to the attention of Mr. Bailey, his immediate superior; that he and Mr. Bailey spent the balance of the afternoon trying to locate Mr. Cano, but were unable to find him; that the next morning he located Mr. Cano and got him to go to the firm's office about 10 o'clock; that through an interpreter Mr. Cano was informed that the hides were undervalued; that after considerable argument they finally convinced Mr. Cano that an amended entry should be filed; that the witness then proceeded to prepare an amended entry increasing the value of the hides from 25 centavos per kilo to 55 or 60 centavos per kilo; that he then obtained a certified check for the additional $210.70, went to the customhouse and presented the amended entry and check to Mr. Lewis who refused it saying that it was too late; that he presented the entry not later than 11:15 a. m.; that he understood that the appraiser and his assistant, as well as Mr. Cano, Mr. Bailey, and Mr. Benitez were at the warehouse of the Finnegan Hide Co., and that the appraisement was being made; that he then went to the office of the Finnegan Hide Co., arriving there about 11:30 a. m.; that he told Mr. Bailey that he had with him the amended entry and check; and that he had no conversation with Mr. Manker, the appraiser.

On cross-examination he testified that he never asked Mr. Lewis about the valuation to be placed on the hides; that he did not remember that Mr. Lewis showed him certain invoices in which the value of the hides was given as much higher; that he never had any conversation with Mr. Lewis previous to entry in regard to the value of the hides; that Mr. Lewis did insist on the witness writing 3½ cents per pound on the invoice; that he believed mention was made that 3½ cents per pound was a very low valuation; that Mr. Cano thought the price of 3½ cents per pound was correct; that previous to his conversation with Mr. Manker, the appraiser, the witness had no notion that the hides were undervalued; that he would not say that Mr. Lewis did not tell him prior to making entry that other persons were making entries of hides at a value greatly in excess of 3½ cents per pound; that he knew of no other invoice sent to him from Chihuahua except the consular invoice; that in the case of other importations by Mr. Cano entry had been made in the name of the Bailey & Mora Co., but that in the instant case, being a very much larger importation than usual, entry was made in the name of Mr. Cano; that this was not due to the fact that the witness knew that the merchandise was being undervalued; that he did not know of any undervaluation until after entry was made; and that at the time he presented the amended entry to Mr. Lewis he believed that the latter intended to convey to the witness that the reason for the rejection of said entry was that the appraiser had gone to make his appraisement.

At the close of the petitioner's evidence counsel for the Government moved to dismiss the petition, which motion was taken under advisement.

The Government then offered in evidence the testimony of two witnesses. The first, John W. Lewis, entry clerk and deputy collector of customs at the port of El Paso, testified that on April 7, when the witness Herrin made this entry, he told Herrin that the value was low, but if he wanted to file it he would accept it; that he, however, required the witness to write the words "3½ cents per pound" upon the entry which he initialed; that the day before when Herrin asked him

about the value of the hides, the witness told him they were entering hides from Juarez at 6½ and 7 cents per pound; that on the Saturday referred to by petitioner's witness Herrin, the latter never presented to the witness an amended entry; that he never presented to him a check purporting to cover additional duties, and that neither Mr. Bailey nor Mr. Cano at any time presented to him an amended entry.

On cross-examination he testified that he remembered that Mr. Bailey came to his office on Saturday, April 10, about 11:30 a. m.; that Mr. Herrin came to his office on Saturday morning April 10 and asked if Mr. Bailey and Mr. Cano were there; that he told him they were not there but had gone to the Finnegan Hide Co., and that Mr. Manker, the appraiser, had said it was too late to present an amended entry; that after that no amended entry was shown to him; that previous to that time he had told him emphatically to present an amended entry; that the appraiser had instructed him not to accept an amended entry if the same was presented for the reason that he was on his way to make the appraisement.

The other witness for the Government, Arthur N. Manker, acting appraiser at the port of El Paso, testified that he appraised the value of the hides in question on Saturday morning, April 10, 1937, a little after 11 o'clock, and that he did not see either Mr. Bailey or Mr. Cano until after he had started the appraisement.

On cross-examination he testified that on the day before he had told Mr. Herrin that when he had finished his work at the post office the next day, which would be approximately at noon, he intended to appraise the hides; that he does not recall the exact time on Saturday when he told Mr. Lewis that he was going to appraise the hides and not to accept any amended entry; that it was not within his province to receive or reject an amended entry, and that he simply gave instructions to Mr. Lewis that he was going to appraise the hides and that it would do no good for him to receive an amended entry.

Upon this record we find that the petitioner has not sustained the burden of proving that he acted in good faith.

The petition is therefore denied.